UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>     Plaintiff,<br><br>          v.<br><br>TEAMI, LLC, a limited liability company,<br><br>ADI HALEVY, a/k/a Adi Arezzini, individually and as an officer of TEAMI, LLC, and<br><br>YOGEV MALUL, individually and as an officer of TEAMI, LLC,<br><br>     Defendants. | Case No. 8:20-cv-518-T-33TGW<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint For Permanent Injunction And Other Equitable Relief ("Complaint"), for a permanent injunction, and other equitable relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b).   The Commission and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in

violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52, in connection with the labeling, advertising, marketing, distribution, and sale of Teami brand tea products that purportedly provide various health benefits and Teami brand skincare products.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

### DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**Defendants**" means the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

1.      "**Corporate Defendant**" means Teami, LLC and its successors and assigns.

2.      "**Individual Defendants**" means Adi Halevy, also known as Adi Arezzini, and Yogev Malul.

B.      "**Clear(ly) And Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.   In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C.      "**Close Proximity**" means that the disclosure is very near the triggering representation. For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar

technique is not in Close Proximity to the triggering representation.

D.        "**Covered Product**" means any Dietary Supplement, Food, or Drug, including Teami

Profit tea, Teami Alive tea, Teami Relax tea, Teami Skinny tea, Teami Colon tea, and the Teami

30 Day Detox Pack.

E.        "**Dietary Supplement**" means:   (1) any product labeled as a dietary supplement or

otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel,

gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin,

mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by

humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite,

constituent, extract, or combination of any ingredient described above, that is intended to be

ingested, and is not represented to be used as a conventional food or as a sole item of a meal or

the diet.

F.        "**Drug**" means:   (1) articles recognized in the official United States Pharmacopoeia,

official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any

supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation,

treatment, or prevention of disease in humans or other animals; (3) articles (other than food)

intended to affect the structure or any function of the body of humans or other animals; and (4)

articles intended for use as a component of any article specified in (1), (2), or (3); but does not

include devices or their components, parts, or accessories.

G.        "**Essentially Equivalent Product**" means a product that contains the identical ingredients,

except for inactive ingredients (e.g., binders, colors, fillers, excipients) in the same form and

dosage, and with the same route of administration (e.g., orally, sublingually), as the Covered

Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

H.      "**Food**" means:   (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

I.      "**Unexpected Material Connection**" means any relationship that might materially affect the weight or credibility of an endorsement and that would not reasonably be expected by consumers.

## ORDER

## I.  PROHIBITED DISEASE AND WEIGHT-LOSS CLAIMS

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that such product:

A.      treats cancer;

B.      treats, prevents, or reduces the risk of heart disease, including by decreasing arterial plaque or improving blood flow to the heart;

C.      lowers cholesterol or blood pressure;

D.      treats, prevents, or reduces the risk of migraines;

E.      treats, prevents, or reduces the risk of colds, flus, or other illnesses;

F.      causes or helps cause weight loss or any specific amount of weight loss;

G.      causes or helps cause rapid weight loss;

H.      causes weight loss by boosting or increasing metabolism;

I.      causes or helps cause fat loss or any specific amount of fat loss; or

J.      cures, mitigates, or treats any disease,

unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.   For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.   Such testing must be:   (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing.   In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.   Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## II.   OTHER PROHIBITED HEALTH-RELATED CLAIMS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under the Section of this Order entitled Prohibited Disease and Weight-Loss Claims, about the health benefits, performance, efficacy, safety, or side effects of any Covered Product unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.   In addition, when such tests or

studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

### III.   PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

IT IS FURTHER ORDERED that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.      All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.      All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement does not apply to a reliably reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by:   (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "reliably reported test" means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.   These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendant's size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

Case 8:20-cv-00518-VMC-TGW   Document 11   Filed 03/17/20   Page 10 of 23 PageID 128


## IV.   FDA-APPROVED CLAIMS

IT IS FURTHER ORDERED that nothing in this Order prohibits Defendants, Defendants'

officers, agents, employees, and attorneys, or all other persons in active concert or participation

with any of them from:

A.      For any drug, making a representation that is approved in labeling for such drug under any

tentative final or final monograph promulgated by the Food and Drug Administration, or under

any new drug application approved by the Food and Drug Administration; and

B.      For any product, making a representation that is specifically authorized for use in labeling

for such product by regulations promulgated by the Food and Drug Administration pursuant to the

Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food

and Drug Administration Modernization Act of 1997.

## V.   PROHIBITED REPRESENTATIONS REGARDING ENDORSEMENTS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with the

labeling, advertising, promotion, offering for sale, sale, or distribution of any product are

permanently restrained and enjoined from making, or assisting others in making, any

misrepresentation, expressly or by implication, about the status of any endorser or person

providing a review of the product, including a misrepresentation that the endorser or reviewer is

an independent or ordinary user of a product.

Page  10 of 23

## VI.   REQUIRED DISCLOSURES OF MATERIAL CONNECTIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product are permanently restrained and enjoined from making, or assisting others in making, any representation, expressly or by implication, about any endorser of such product without disclosing, Clearly and Conspicuously, and in Close Proximity to that representation, any Unexpected Material Connection between such endorser and (1) any Defendant; or (2) any other individual or entity affiliated with the product.

## VII.   MONITORING OF ENDORSERS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product by means of an endorsement by an endorser with a material connection to (1) any Defendant, or (2) any other individual or entity affiliated with the product, must take sufficient steps designed to ensure compliance with the Sections of this Order entitled Prohibited Representations Regarding Endorsements and Required Disclosures of Material Connections.   Such steps must include, at a minimum:

A.      Providing each such endorser with a clear statement of his or her responsibilities to

disclose ("Statement of Disclosure Responsibilities") Clearly And Conspicuously, and in Close Proximity to the endorsement, in any online video, social media posting, or other communication endorsing the product, the endorser's Unexpected Material Connection to any Defendant or any other individual or entity affiliated with the product, and obtaining from each such endorser a signed and dated statement acknowledging receipt of that statement and expressly agreeing to comply with it;

*Provided*, *however*, in the case of endorsers participating in a program through which they only receive free or discounted products sold by Defendants or referral payments not to exceed $20 per month, it will be sufficient to 1) provide them with a Clear and Conspicuous Statement of Disclosure Responsibilities either a) as part on an online sign-up process to participate in the program or b) for those who are already participating in the program as of entry of this Order, by electronic mail; and 2) obtain their electronic signature acknowledging their receipt of the statement and agreement to comply with it.

B.      Establishing, implementing, and thereafter maintaining a system to monitor and review the representations and disclosures of endorsers with material connections to any Defendant or any other individual or entity affiliated with the product sufficiently designed to ensure compliance with the Sections of this Order entitled Prohibited Representations Regarding Endorsements and Required Disclosures of Material Connections, including reviewing each specifically contracted online video and social media posting promptly after publication;

*Provided*, *however*, in the case of endorsers participating in a program through which they only receive free or discounted products sold by Defendants or referral payments not to exceed $20 per month, it will be sufficient to conduct monthly reviews of the fifty endorsers generating the

Page 12 of 23

highest levels of product sales, in dollars, in the prior month.

C.       Immediately terminating and ceasing payment to any endorser with a material connection to any Defendant, or any other individual or entity affiliated with the product, who Defendants reasonably conclude:

1.       Has misrepresented, in any manner, his or her independence or impartiality; or

2.       Has failed to disclose, Clearly And Conspicuously, and in Close Proximity to the endorsement, an Unexpected Material Connection between such endorser and any Defendant or any other individual or entity affiliated with the product.

*Provided*, *however*, that Defendants may provide an endorser with notice of failure to adequately disclose and an opportunity to cure the disclosure prior to terminating the endorser if Defendants reasonably conclude that the failure to adequately disclose was inadvertent.   Defendants shall inform any endorser to whom they have provided a notice of a failure to adequately disclose an Unexpected Material Connection that any subsequent failure to adequately disclose will result in immediate termination; and

D.       Creating reports showing the results of the monitoring required by sub-section B of this Section of the Order.

## VIII.   MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.       Judgment in the amount of $15,209,452 is entered in favor of the Commission against Individual Defendants and Corporate Defendant, jointly and severally, as equitable monetary relief.

B.       Defendants are ordered to pay to the Commission $1,000,000 as follows:

1.      Within 7 days of entry of this Order, Defendants are ordered to pay $500,000 to the Commission, which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.   Defendants shall wire by electronic funds transfer these funds to the Commission in accordance with instructions previously provided by a representative of the Commission;

2.      Within 180 days of entry of this Order, Defendants shall wire by electronic fund transfer the sum of $250,000 to the Commission, in accordance with instructions provided by a representative of the Commission;

3.      Within 1 year of entry of this Order, Defendants shall wire by electronic fund transfer the sum of $250,000 to the Commission, in accordance with instructions provided by a representative of the Commission;

4.      Upon completion of the payments described above in Subsection VIII.B. of this Order, the remainder of the judgment is suspended, subject to the Subsections below.

C.      To secure the payment obligations under Subsections VIII.B.2 and 3 of this Order, Defendants grant the Commission liens on and security interests in certain property ("Collateral"), as set forth below.   These interests are incorporated by reference as if fully set forth verbatim and grant a security interest in the following Collateral:

1.      Individual Defendant Adi Halevy hereby grants to the Commission, pursuant to Deeds of Trust, liens on and security interests in the real properties located at: 4840 NE 99th Avenue, Portland, OR 97220; 4915 SE 111th Avenue, Portland, OR 97266; and 6850 NE Emerson Street, Portland, OR 97218.   Individual Defendant Halevy shall submit to the clerk's office for recording, at her expense, all security documents necessary to perfect the Commission's

liens on the properties within 14 days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within 7 days after receipt of such documents; and

2.      Individual Defendant Yogev Malul hereby grants to the Commission, pursuant to a Mortgage, a lien on and security interest in the real property located at 18800 NE 29th Avenue, Unit 123, Aventura, FL 33180.   Individual Defendant Malul shall submit to the clerk's office for recording, at his expense, all security documents necessary to perfect the Commission's lien on the property within 14 days after entry of this Order, and shall deliver to the Commission copies of such officially recorded documents within 7 days after receipt of such documents.

D.      In the event that Defendants fail to make a required payment when due under Subsection VIII.B. of this Order, or if Individual Defendants fail to comply with the terms of a Deed of Trust or Mortgage and such failure is not timely cured, the entire judgment amount, less any amount previously paid, shall immediately become due and payable by all Defendants.   Interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance.   Time is of the essence for the payments specified in this Subsection.

E.      Upon full payment of Defendants' obligations under Subsections VIII.B.1 and 2 of this Order, the Commission agrees to release the security interests granted in the real properties referenced in Subsection VIII.C.1 of this Order.   Upon full payment of Defendants' obligations under Subsection VIII.B. of this Order, the Commission agrees to release the remaining security interests granted herein.   Individual Defendants Halevy and Malul shall be responsible for preparing and filing (at their expense) any termination or other statements reasonably required in

connection therewith.   The Commission shall also promptly release or subordinate such liens, security interests, and other protections granted herein to the extent necessary to permit the sale or encumbrance of part or all of the Collateral if the proceeds of such sale or encumbrance are remitted directly to the Commission in partial or complete satisfaction of this Order.   Individual Defendants Halevy and Malul shall pay all fees and costs related to such release or subordination, including filing fees.

F.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "Financial Representations") submitted to the Commission, namely:

1.      the Financial Statement of Individual Defendant Adi Halevy signed on August 29, 2019, including the attachments;

2.      the Financial Statement of Individual Defendant Yogev Malul signed on September 3, 2019, including the attachments;

3.      the Financial Statement of Corporate Defendant Teami LLC signed on August 29, 2019, including the attachments; and

4.      the representations and additional documentation submitted by Defendants' counsel Ricky Huff to Commission counsel Michael Ostheimer and Christine DeLorme dated September 23, 2019 (two emails, one of which attaches tax returns and a letter from counsel); September 24, 2019; October 10, 2019; and December 2, 2019 (attaching a deed).

G.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material asset, materially

misstated the value of any asset, or made any other material misstatement or omission in the Financial Representations identified above.

H.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection VIII.A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## IX.   ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.   Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## X.   CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.   If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

## XI.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an

acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Individual Defendant for any business that

such Defendant, individually or collectively with any other Defendants, is the majority owner or

controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to:   (1)

all principals, officers, directors, and LLC managers and members; (2) all employees having

managerial responsibilities for conduct related to the subject matter of the Order and all agents

and representatives who participate in conduct related to the subject matter of the Order; and (3)

any business entity resulting from any change in structure as set forth in the Section titled

Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current

personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that

Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this

Order.

## XII.   COMPLIANCE REPORTING

        IT IS FURTHER ORDERED that Defendants make timely submissions to the

Commission:

A.      Ninety days after entry of this Order, each Defendant must submit a compliance report,

sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email address and

telephone number, as designated points of contact, which representatives of the Commission may

use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the

Page  19 of 23

Case 8:20-cv-00518-VMC-TGW   Document 11   Filed 03/17/20   Page 19 of 23 PageID 137

acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Individual Defendant for any business that

such Defendant, individually or collectively with any other Defendants, is the majority owner or

controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to:   (1)

all principals, officers, directors, and LLC managers and members; (2) all employees having

managerial responsibilities for conduct related to the subject matter of the Order and all agents

and representatives who participate in conduct related to the subject matter of the Order; and (3)

any business entity resulting from any change in structure as set forth in the Section titled

Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current

personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that

Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this

Order.

## XII.   COMPLIANCE REPORTING

        IT IS FURTHER ORDERED that Defendants make timely submissions to the

Commission:

A.      Ninety days after entry of this Order, each Defendant must submit a compliance report,

sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email address and

telephone number, as designated points of contact, which representatives of the Commission may

use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the

Page  19 of 23

Case 8:20-cv-00518-VMC-TGW   Document 11   Filed 03/17/20   Page 19 of 23 PageID 137

acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Individual Defendant for any business that

such Defendant, individually or collectively with any other Defendants, is the majority owner or

controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to:   (1)

all principals, officers, directors, and LLC managers and members; (2) all employees having

managerial responsibilities for conduct related to the subject matter of the Order and all agents

and representatives who participate in conduct related to the subject matter of the Order; and (3)

any business entity resulting from any change in structure as set forth in the Section titled

Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current

personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that

Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this

Order.

## XII.   COMPLIANCE REPORTING

        IT IS FURTHER ORDERED that Defendants make timely submissions to the

Commission:

A.      Ninety days after entry of this Order, each Defendant must submit a compliance report,

sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email address and

telephone number, as designated points of contact, which representatives of the Commission may

use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the

Page  19 of 23

activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, each Individual Defendant must:   (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:   (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:   creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in:   (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or

otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:   "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:   _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:   Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC   20580.   The subject line must begin:   FTC v. Teami, LLC.

## XIII.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.   Specifically, Corporate Defendant in connection with any activity subject to this Order and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or

otherwise, that person's:   name; addresses; telephone numbers; job title or position; dates of

service; and (if applicable) the reason for termination;

C.      records of all consumer complaints and refund requests, whether received directly or

indirectly, such as through a third party, and any response;

D.      all records necessary to demonstrate full compliance with each provision of this Order,

including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material, except social media

posts by endorsers participating in a program through which they only receive free or discounted

products sold by Defendants or referral payments not to exceed $20 per month.

## XIV.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance

with this Order, including any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission

each Defendant must:   submit additional compliance reports or other requested information,

which must be sworn under penalty of perjury; appear for depositions; and produce documents for

inspection and copying.   The Commission is also authorized to obtain discovery, without further

leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30

(including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly

with each Defendant.   Defendant must permit representatives of the Commission to interview

any employee or other person affiliated with any Defendant who has agreed to such an interview.

The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XV.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this <u>17th</u> day of March, 2020.**

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Page  23 of 23